UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONALD R. SANTOS,<br><br>    Plaintiff<br><br>v.<br><br>KENNETH ANNIKOS, et al.,<br><br>    Defendants | Case No.: 3:23-cv-00281-MMD-CSD<br><br>**Report & Recommendation of U.S. Magistrate Judge**<br><br>Re: ECF Nos. 96, 96-1 |

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Plaintiff's motion for leave to amend and proposed first amended complaint (FAC). (ECF Nos. 96, 96-1.) Defendant Dr. Halki filed a limited response, noting that he does not substantively oppose the motion, but asks whether there will be amendment of the scheduling order and whether there will be a stay to screen the proposed FAC. (ECF No. 97.) Defendants Jessica Rambur (sued as Isaacson), John Henley, Lorenzo Villegas, Dr. Joseph Benson, Gaylene Fukagawa (sued as Gaylene), John Keast, Dr. Martin Naughton, Melissa Mitchell, Jeremy Tafelmeyer, Zachary Mahon (sued as Majon), Megan Penneau (sued as Nurse Megan), and Michael Minev oppose the motion. (ECF Nos. 103, 103-1.) Plaintiff filed a reply. (ECF Nos. 110, 111.)

    For the reasons set forth below, the motion should be granted in part and denied in part.

///

///

## I. BACKGROUND

Plaintiff is an inmate in custody of the Nevada Department of Corrections (NDOC) proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The court screened Plaintiff's original complaint and allowed him to proceed with the following claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Rambur, Henley, Keast, and Mitchell based on allegations that Rambur and Henley denied his grievance that he was in severe pain and needed another appointment to get an injection, and Keast repeatedly told Plaintiff he would get Plaintiff an appointment for an injection but never helped Plaintiff, and Mitchell promised to help Plaintiff but never did anything to remedy his situation; (2) an Eighth Amendment deliberate indifference to serious medical needs claim against Villegas, Dr. Minev, Fukagawa, Dr. Naughton, Dr. Benson, and Penneau based on allegations they denied, lowered or delayed Plaintiff's medication, and as a result he suffered in severe pain; (3) a retaliation claim against Keast based on allegations that Keast denied Plaintiff access to a bag for his walker because Plaintiff filed lawsuits in the past; (4) a due process claim against Keast, Mahon, and Tafelmeyer based on the alleged authorized, intentional taking of bags for his walker; (5) an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Halki based on allegations that Plaintiff advised him of his family history of colorectal cancer, and Dr. Halki recommended a colonoscopy but it was never scheduled. (ECF No. 6.) The remaining claims and defendants were dismissed. (*Id.*)

On September 3, 2024, Plaintiff timely filed this motion for leave to amend and proposed first amended complaint.

///

///

## II. LEGAL STANDARD

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2). Here, Plaintiff was required to seek leave to amend.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

## III. DISCUSSION

**A. Amendment**

The Defendants, other than Dr. Halki, oppose Plaintiff's motion for leave to amend, arguing: (1) Plaintiff's motion is not supported by points and authorities, and therefore, should be denied; (2) Plaintiff's motion is brought in bad faith as it provides little to no reason for the

amendment and was filed nearly a year after the original complaint was screened and (3) leave to amend is unduly prejudicial where Plaintiff includes new allegations and a new claim regarding physical therapy which would result in additional discovery.

The court is not convinced by Defendants' arguments. Plaintiff is a *pro se* inmate litigant, and on this occasion, the court will excuse his failure to formally comply with the rules regarding the filing of points and authorities. The rules regarding amendment are familiar to defense counsel and the court and Defendants were in no way prejudiced by the failure to strictly comply with that rule.

While Defendants argue that Plaintiff was dilatory in seeking amendment, he did so within the parameters of the operative scheduling order.

The only new allegations that Defendants point to are the allegations regarding physical therap. However, those allegations were present in the original complaint and discussed in the screening order. (*See* ECF No. 7 at 10: "[S]he further recommended that 'physical therapy be arranged twice a week for 6 weeks." "[I]t is now June, 2023, and Plaintiff has not received the medically ordered epidural injection – or physical therapy." ECF No. 6 at 4:26-27: "She also told Plaintiff to do physical therapy for six weeks." ECF No. 6 at 5:1-2: "Plaintiff is in severe pain, and he has not received any more steroid injections or physical therapy since his appointment on February 16, 2022.") For Defendants to act surprised by those allegations now is disingenuous. Moreover, any additional discovery based on the physical therapy allegations would likely be minimal. It will be up to Plaintiff to seek any required extensions of the operative discovery deadline in conformity with the scheduling order and Local Rules. However, the current discovery deadline is January 24, 2025, leaving Plaintiff sufficient time to conduct additional discovery within the existing deadline. (ECF No. 88.)

To the extent Defendants argue Plaintiff has engaged in voluminous discovery that is somehow improper, they should raise their concerns in a discovery motion that complies with the Federal Rules of Civil Procedure and Local Rules.

In sum, the court does not find that amendment is sought in bad faith, will prejudice Defendants, or result in an undue delay in this litigation.

Finally, the court will screen Plaintiff's proposed FAC to determine whether amendment is futile in any respect.

**B. Screening Standard**

Under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g., Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## C. Claim 1

As was asserted in the original complaint, Plaintiff alleges that prior to being incarcerated he was involved in a trucking accident where he suffered shoulder and back injuries and had to undergo two surgeries. He still has a bulging posterior disc rupture at L4-5 which causes severe back pain and related symptoms. In late 2021, he was referred to Sierra Neurosurgery, and he saw Dr. Demers, who recommended a spinal fusion surgery. (ECF No. 96-1 at 6.) Plaintiff then saw Dr. Halki, who advised that if Plaintiff underwent the fusion procedure he would only receive five days of narcotic pain medication, and would then "be kicked out of the infirmary on [i]buprofen or Tylenol." (*Id.* at 7.) Dr. Demers explained to him that post-surgical care would require four to six weeks of narcotic medication. (*Id*.) Ultimately, Plaintiff decided that he wanted to try conservative treatment measures, which he was advised by Sierra Neurosurgery

would include epidural steroid injections at four-month intervals and physical therapy two to three times a week for six weeks. (*Id*.)

Dr. Halki ordered the epidural injection on July 27, 2022, and it was approved on August 3, 2022, but he did not receive the injection until January 3, 2024. (*Id*. at 9.)

Plaintiff filed a grievance (number 2006-31-42163) on August 25, 2022. He claims that Rambur responded to this grievance on September 15, 2022, that Plaintiff was pending scheduling, even though he did not get the injection until January 2024. He filed another grievance (number 2006-31-43546) that was rejected by John Henley as being previously filed by Plaintiff. (*Id*.)

Plaintiff sent a request to Keast when he had not received the injection by December 12, 2022, and Keast responded that it had been approved on August 3, 2022, but it was not a priority and was pending scheduling. On February 16, 2023, Plaintiff told Keast about his pain and asked about the injection and Keast told him there was some confusion, but it would be scheduled. On March 27, 2023, and again on May 11, 2023, Keast told Plaintiff the injection appointment would be scheduled.

In addition, after Sierra Neurosurgery recommended physical therapy two to three times a week for six weeks (on July 21, 2022), Dr. Benson ordered a physical therapy home exercise program. Plaintiff points out that this is not what was recommended by Sierra Neurosurgery, and in any event, Plaintiff was never given the home program materials.

The FAC mentions that Plaintiff filed a prior civil rights action, case 3:16-cv-00394-MMD-VPC, which settled on January 10, 2018, and resulted in Plaintiff having two MRIs on his thoracic and lumbar spine, which corroborate his claims of back pain. (*Id*. at 8-9.)[1]

---

[1] The court does not construe the FAC as asserting any claims based on the prior litigation.

Based on these allegations Plaintiff raises an Eighth Amendment deliberate indifference to serious medical needs claim.

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials

provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas,* 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

The court finds that Plaintiff states a colorable Eighth Amendment deliberate indifference to serious medical needs claim in Claim 1 of the FAC against Keast and Dr. Benson. Plaintiff alleges that he informed Keast multiple times that he was in pain and that he had not received his epidural injection, and Keast kept telling Plaintiff that it would be scheduled, but nothing was done for some period. All the while, Plaintiff continued to suffer in pain. Plaintiff also alleges that despite being ordered a physical therapy program of two to three times a week for six weeks, Dr. Benson changed this to a home instruction program, which Plaintiff never received.

Plaintiff does not state a colorable claim for relief against Dr. Halki, Rambur, or Henley.

While Dr. Halki is mentioned in Claim 1, Plaintiff does not state a colorable claim for relief against Dr. Halki. Plaintiff alleges that Dr. Halki ordered the epidural injection back in July 2022, but there is no allegation that Plaintiff subsequently brought it to Dr. Halki's attention that the epidural injection was not scheduled for another year and a half.

Nor does Plaintiff state a colorable claim for relief against grievance responders Rambur and Henley. Plaintiff's FAC contains very minimal allegations as to Rambur and Henley in Claim 1. He avers that Rambur responded to a grievance that Plaintiff was pending scheduling, but he provides no information about what he wrote in the grievance to which Rambur responded so as to plausibly allege that she knew of and disregarded a risk to his health in responding to the

grievance in this fashion. Similarly, Plaintiff merely alleges that Henley responded to a grievance as being duplicative, but includes no details about what the grievance said to Henley, such that the court cannot conclude there are allegations to support a claim of deliberate indifference on behalf of Henley.

In sum, the Eighth Amendment claim for deliberate indifference to serious medical needs in Claim 1 should proceed against Keast and Dr. Benson.

**D. Claim 3[2]**

Plaintiff alleges that on March 27, 2022, APRN Lorenzo Villegas refused to increase his Baclofen 40mg twice daily to 60mg, which Plaintiff had taken previously and was more effective. (ECF No. 96-1 at 13.)

He avers that Rambur acted deliberately to stop Plaintiff's grievance with improper grievance memorandums stating that there was "no harm or remedy noted" when both of those things obviously were included. (*Id*.)

Plaintiff claims that Dr. Benson repeatedly refused to even order Acetaminophen #180 after his Baclofen 40mg was suspended. Dr. Benson said he would renew the Baclofen 40mg twice daily, but Plaintiff was subsequently told there was no order, and he received no Baclofen. Plaintiff filed an emergency grievance and was told that Dr. Benson did not renew the medication because Plaintiff no longer needed it. Then, Dr. Benson only ordered Plaintiff #60 Acetaminophen to take twice a day. (*Id*. at 14.)

Plaintiff avers that APRN Villegas sided with Dr. Benson, stating that Plaintiff's labs came back indicating that a reduction was in order. Plaintiff insisted that he needed the

---

[2] Plaintiff omits Claim 2 from the original complaint and goes to Claim 3 in the FAC as he was not allowed to proceed with Claim 2 on screening of the original complaint.

medication and Villegas had Plaintiff sign a release of liability and ordered the Acetaminophen #180. Plaintiff asserts, however, that Villegas refused to explore other options for Plaintiff, including Lyrica or narcotic analgesics. (*Id*.)

Plaintiff goes on to allege that when Dr. Minev served as medical director between 2020 and 2021, he implemented a decree that Non-Steroidal Anti-Inflammatory drugs (NSAIDs) and Acetaminophen would be limited to "floor stock," and only 40 two-packs would be issued per month. Plaintiff claims that this reduced his Acetaminophen tablets by 100 each month, and Plaintiff was left with Baclofen 40gm, which did not provide relief for his radiculopathy symptoms. Inmates were told they could buy Acetaminophen, but Plaintiff (who is indigent) states the packets were over $1 each. (*Id*. at 15.)

Plaintiff then states that discovery responses from Dr. Halki reflect an inability to remember facts and discussions that took place on July 27, 2022. Plaintiff believes that it is possible that Dr. Halki was "inebriated on that date, as [Dr. Halki] was terminated shortly thereafter for either bringing alcoholic beverage(s) on to prison grounds or being outwardly intoxicated and trying to come to work at NNCC-RMF." (*Id*.)

Plaintiff asserts that his prescriptions are generally written for 90-days, but he contends they should be written for one year so as not to have any interruption. (*Id*. at 16.)

Plaintiff alleges that on October 26, 2021, Megan Penneau was passing medication and Plaintiff asked about his 40 packets of Acetaminophen, and she yelled, "You'll get it when we get around to it." It took several days before another nurse brought Plaintiff the medication. (*Id*.)

Plaintiff avers that on January 11, 2021, when Plaintiff was trying to avoid an interruption in his Baclofen 40mg, Gaylene Fukagawa said, "Well- your appointment goes through me, and you will not get around me." He claims this resulted in an 11-day interruption of

his Baclofen 40mg. (*Id*.) He claims that Fukagawa is responsible for scheduling provider appointments and many times she scheduled Plaintiff's appointments beyond his medication expiration dates, resulting in his filing emergency grievances. (*Id*. at 17.)

Plaintiff alleges that he advised Melissa Mitchell of expirations of his medication by emergency grievance, and several times she responded it was not an emergency and did nothing. In addition, when he came back from Sierra Neurosurgery, Mitchell took his post-procedure care directive and said she would investigate it, but nothing was done. (*Id*.)

Finally, Plaintiff alleges that Rambur issued numerous improper grievance memorandums to derail Plaintiff's efforts to resolve these issues or exhaust administrative remedies.

The court finds that in Claim 3 Plaintiff states a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Villegas, Dr. Benson, Dr. Minev, Penneau, and Fukagawa. Plaintiff alleges that Villegas refused to increase his dose of Baclofen to a dose that is more effective for his pain and refused to explore other effective options for Plaintiff after Dr. Benson limited his medication. Plaintiff avers that Dr. Benson refused to order Plaintiff Acetaminophen #180 after his Baclofen was suspended, and then did not renew the Baclofen after representing that he would do so and prescribed him an insufficient amount of Acetaminophen. Plaintiff claims that Dr. Minev implemented a policy that resulted in Plaintiff not being able to obtain medication sufficient for his needs. He asserts that Penneau did not timely give him his medications, and he did not receive them for several days. Finally, he alleges that Fukagawa's conduct resulted in an 11-day interruption of his medications, and she frequently delayed his appointments.

1  Plaintiff fails to include allegations that support a claim for relief against Rambur, Mitchell, Dr. Halki, Dr. Naughton, or Keast. First, Plaintiff alleges that Rambur responded to his grievances with improper grievance memoranda which impeded his efforts to resolve his medical issues, but he includes no allegations about what information was in those grievances or any allegations that would show Rambur was deliberately indifferent to his serious medical needs.

Similarly, Plaintiff alleges that Mitchell responded to emergency grievances about the expiration of his medications by stating there was no emergency, but he includes no facts about how this resulted in any specific harm.

Next, there are no specific allegations as to Dr. Naughton or Keast in Claim 3. Plaintiff's FAC contains a footnote which states that Keast explains in response to an interrogatory that he was aware of an instance in January 2021 where there was a delay in receiving his prescription for Baclofen from the pharmacy (ECF No. 96-1 at 18). However, Plaintiff's FAC includes no allegations that Keast was responsible for this delay or that he was apprised of it at the time and failed to take action.

Finally, Plaintiff references Dr. Halki's discovery responses and his suspicions about Dr. Halki's sobriety, but there are no allegations in Claim 3 about Dr. Halki denying, delaying, or interfering with Plaintiff's medications.

Therefore, Claim 3 should proceed against Villegas, Dr. Benson, Dr. Minev, Penneau, and Fukagawa.

**E. Claim 4A**

Plaintiff alleges that in December 2022, Keast approved prisoners to have personal walkers with accessory bags sent in by friends or family. Keast confirmed Plaintiff could have a seated walker sent in by family with a small bag, but no basket. (ECF No. 96-1 at 21.) A walker

with a small bag was ordered and delivered to Plaintiff on March 20, 2023. Plaintiff returned from an outside dental appointment on March 27, 2023. Plaintiff claims this dental appointment was the result of litigation in case 3:16-cv-00394-MMD-CLB. When Plaintiff returned from the appointment, Plaintiff was issued the walker, but he was told that he could not have the bag that came with it because it was too big and not see through, and the bag had been sent to property. (*Id*. at 21-22.)

Plaintiff claims that Keast retaliated against Plaintiff when he called the warden and embellished the size and material of the bag because he was angry about the result of the prior litigation (ordering the dental appointment). Plaintiff asserts the bag was not too large and was made of an appropriate material, as it was subsequently issued to him. (*Id*. at 22.)

The court finds, as did the order screening the original complaint, that Plaintiff states a colorable retaliation claim against Keast based on allegations that Keast denied Plaintiff access to the walker bag because of Plaintiff's prior litigation involving Keast. Therefore, Claim 4A should proceed against Keast.

**F. Claim 4B**

Plaintiff alleges that on June 25, 2021, Plaintiff was walking with his medically provided walker (issued on December 20, 20217) with its small black accessory bag which contained his meal. Mahon told Plaintiff to come over for a random search, where Tafelmeyer was present. Mahon removed Plaintiff's wallet and went through the papers in it, and Tafelmeyer untied the black accessory bag from the walker, handed the food items to Plaintiff and put the bag in the trash, advising Plaintiff he could not have the bag. (ECF No. 96-1 at 23.)

Until he was re-issued a bag for another walker in November 2023, Plaintiff did not have a bag for his possessions. Plaintiff alleges that pursuant to Administrative Regulation (AR) 711,

when property is confiscated, it should be packaged and written up in an unauthorized property notification form. Plaintiff claims this was not done, so there was no recourse to appeal the confiscation. (*Id.* at 24.)

An authorized, intentional deprivation of property is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). An authorized deprivation is one carried out pursuant to established state procedures, regulations or statutes. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Pitt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

The court liberally construes Claim 4B as asserting that the taking of the bag was an authorized, intentional deprivation. Therefore, consistent with the order screening the original complaint, Plaintiff should be permitted to proceed with his due process property claim against Mahon and Tafelmeyer in Claim 4B.

**G. Claim 5**

Plaintiff alleges that he discussed his family history of colorectal cancer with Dr. Naughton in 2018, who requested a referral to gastrointestinal (GI) specialist, but nothing was done. Dr. Naughton told Plaintiff that colonoscopies were rarely performed. (ECF No. 96-1 at 25.)

On June 12, 2019, Plaintiff sent an inquiry about the referral, but the unsigned response indicated that Plaintiff's labs were normal and required no follow up, so the request for a GI referral was denied. (*Id.*)

In July 2022, Plaintiff saw Dr. Halki and again reported his family history of colorectal cancer. Plaintiff also advised Dr. Halki that he had been experiencing abdominal pain. Dr. Halki indicated he would recommend a colonoscopy, but nothing was ordered. Plaintiff reported

continued abdominal pain between December 2022 and into 2023, and he requested a GI referral and colonoscopy. (*Id*. at 25-26.)

On March 27, 2023, APRN Villegas ordered an occult blood in stool screening and related labs. (*Id*. at 26.)

Plaintiff mentions that he has a litigation history with Keast, and that Keast tends to deny and delay treatment and referrals.

Plaintiff also states that he filed a grievance on December 22, 2022 (number 2006-31-46686), and at the second level it was described as resolved, but Plaintiff did not have a colonoscopy yet. (*Id*. at 27.)

On May 2023, Plaintiff saw Dr. Barrett, who requested a GI referral, which occurred on December 1, 2023, and a colonoscopy was recommended. It has still not been scheduled, and Plaintiff continues to experience constipation, abdominal pain, and a change in bowel movements. (*Id*.)

In a footnote, Plaintiff states that about nine months ago he went to pill call and saw a blue bill in his pill cup and was told that Dr. Benson ordered it for IBS, but Plaintiff never saw Dr. Benson for IBS. Plaintiff refused the medication. (*Id*.)

The court finds that Plaintiff states a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Halki. Plaintiff alleges that he saw Dr. Halki and reported his family history colorectal cancer and GI symptoms and Dr. Halki said that a colonoscopy would be ordered, but nothing was done.

Plaintiff fails to state a claim against Dr. Naughton, Keast, Dr. Barrett, or Dr. Benson.

First, Plaintiff alleges that Dr. Naughton made a referral to a GI specialist, but nothing was done, but includes no allegations that Dr. Naughton was made aware that the referral was not completed or that he did not see a specialist.

Second, Plaintiff mentions Keast and the prior litigation history, but includes no factual allegations of deliberate indifference in this claim as to Keast.

Third, Plaintiff mentions Dr. Barrett but only to the extent that a referral to a GI specialist was made, and that this did occur. There are no allegations that Dr. Barret has been made aware of this and failed to act.

Finally, Plaintiff alleges that he was told that Dr. Benson was responsible for prescribing a blue pill for IBS when he had not seen Dr. Benson for this condition. Plaintiff alleges, however, that he did not take the medication, and does not indicate he suffered any harm as a result of this conduct.

Therefore, Claim 5 should proceed only against Dr. Halki.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING IN PART AND DENYING IN PART** Plaintiff's motion for leave to amend (ECF No. 96);

(2) The proposed FAC (ECF No. 96-1) should be **FILED** and should be deemed the operative complaint in this action;

(3) Plaintiff should be permitted to **PROCEED** with the following claims in the FAC:

　　(a) An Eighth Amendment deliberate indifference to serious medical needs claim against Keast and Dr. Benson in Claim 1. This claim should **not** proceed against Dr. Halki, Rambur or Henley.

    (b) An Eighth Amendment deliberate indifference to serious medical needs claim against Villegas, Dr. Benson, Dr. Minev, Penneau and Fukagawa in Claim 3. This claim should **not** proceed as to Rambur, Mitchell, Dr. Halki, Dr. Naughton, and Keast.

    (c) A First Amendment retaliation claim against Keast in Claim 4A.

    (d) A Fourteenth Amendment due process intentional deprivation of property claim against Mahon and Tafelmeyer in Claim 4B.

    (e) An Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Halki in Claim 5. This claim should **not** proceed against Dr. Naughton, Keast, Dr. Barrett, or Dr. Benson.

(4) If any party believes that an order adopting this report and recommendation requires the extension of any scheduling order deadlines, they may file an appropriate motion or stipulation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

///

///

18

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 18, 2024

_____
Craig S. Denney
United States Magistrate Judge